UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Suttatip Vechvitvarakul,   :   Case No. 1:10-cv-114
                           :
    Plaintiff,             :
                           :
vs.                        :
                           :
The Health Alliance of Greater :
Cincinnati, et al,         :
                           :
    Defendants.            :

**ORDER**

Before the Court in this case is a motion to dismiss filed by Defendants University of Cincinnati College of Medicine, Dr. Amy Reed, Dr. Andrew Filak, and Dr. Gregory Rouan.  (Doc. 13)  Plaintiff opposes the motion (Doc. 16), and Defendants have filed a reply.  (Doc. 18)  Also pending is Plaintiff's motion to amend and/or correct her complaint (Doc. 17), which has also been fully briefed.

**FACTUAL BACKGROUND**

Plaintiff, Dr. Suttatip Vechvitvarakul, is a native-born citizen of Thailand, who resides and works in the United States pursuant to an exchange visitor visa.  She is a licensed physician, and a surgeon certified by the American Board of Surgery.  In 2008, Dr. Vechvitvarakul applied for admission to the University of Cincinnati Vascular Surgery Fellowship Program.  This program is a two-year program leading to board certification

-1-

in vascular surgery. The program is operated by the Health Alliance and University Hospital, in conjunction with the University of Cincinnati College of Medicine.

Dr. Vechvitvarakul was accepted into the fellowship program, whereupon she entered into a Graduate Medical Education Contract with the Health Alliance on behalf of University Hospital. (Doc. 11, Exhibit 1) The contract's term was July 1, 2008 to June 30, 2009, and Vechvitvarakil agreed to comply with all terms of the 2008/2009 Graduate Medical Education Agreement which was incorporated by reference. Section 5.1 of the GMEA (Doc. 2, Exhibit 3) provides that the resident may be appointed for the second program year contingent upon several factors, including satisfactory completion of training and satisfactory performance evaluations.

Dr. Vechvitvarakul alleges that she received a "Letter of Deficiency" dated September 26, 2008 from Dr. Amy Reed. Dr. Reed is an Associate Professor of Surgery at UC, the Program Director for the fellowship program, and was Dr. Vechvitvarakul's immediate supervisor. According to Section 4.1.2 of the GMEA, a letter of deficiency is intended to provide a resident with (a) notice of a perceived deficiency in program performance, and (b) steps which must be taken to cure that deficiency. The GMEA also states that "The Program Director will provide the Resident with feedback consistent with the letter of deficiency" and that "if

the resident satisfactorily resolves the deficiency and continues to perform acceptably thereafter, the period of unacceptable academic performance does not affect the resident's career development." (Complaint ¶20, quoting from GMEA Section 4.1.2.) Plaintiff alleges that the letter of deficiency listed several conditions and directives that she needed to follow to cure the deficiencies, including six hours of instructions with an English language coach. The letter also stated that Dr. Reed would meet with Dr. Vechvitvarakul monthly through December 2008 in order to apprise her of her performance.

Plaintiff alleges that she complied with all of the conditions set forth in the letter of deficiency, and performed her duties competently. But she alleges that Dr. Reed did not hold meetings with her about her performance between the date of the letter and the end of 2008, and that she received no notice of any continued deficiencies in her performance or a warning about any such deficiencies. Dr. Vechvitvarakul believed she had complied with all of the terms of the September 2008 letter of deficiency. But Dr. Reed then informed her in late December 2008 that she was not satisfactorily progressing in the program. On January 13, 2009, Dr. Reed gave Dr. Vechvitvarakul formal written notice that her program participation would end on June 30, 2009.

Dr. Vechvitvarakul sought internal review of this decision from Dr. Andrew Filak, pursuant to Section 4.1.5. of the GMEA,

which provides for the appointment of a neutral physician reviewer. Dr. Filak assigned Dr. Gregory Rouan, Associate Chair of Education of UC's Internal Medicine Department, to conduct the review. Dr. Rouan concluded that, "although Dr. Reed did not document monthly feedback with Dr. Vechvitvarakul in her file, she did provide feedback to her on a variety of occasions." Dr. Rouan concluded that Dr. Vechvitvarakul's performance was unacceptable, and that she was not treated differently from other physicians in the program. (Compl. 28) Dr. Filak then appointed a three-member panel to conduct a final review, which found no basis to vacate Dr. Reed's decision.

Dr. Vechvitvarakul filed a charge of national origin discrimination with the EEOC on June 15, 2009. (Compl. Exhibit A) She received a right to sue letter on November 23, 2009, and she timely filed a complaint in this court on February 22, 2010. She alleges claims under 42 U.S.C. §1983 for violation of her substantive due process rights; discrimination claims under both federal and state law; and a state law claim for breach of contract against University Hospital, the Health Alliance, the University of Cincinnati College of Medicine ("UC"), and three individual defendants (Dr. Amy Reed, Dr. Andrew Filak, and Dr. Gregory Rouan).

UC and the three individual Defendants moved to dismiss all claims against them on a variety of grounds. (Doc. 13) Plaintiff

does not oppose the dismissal of the individual defendants, and does not contest dismissal of all claims against UC except for her Title VII claim.  She argues that UC is a proper defendant in her federal claim of national original discrimination.

**ANALYSIS**

The only issue raised in Defendants' motion to dismiss that remains in dispute is whether Plaintiff's Title VII claim against UC should be dismissed because she failed to identify UC in her EEOC charge.  On the written charge form, she listed the University of Cincinnati Hospital and the Health Alliance of Greater Cincinnati as her employers who discriminated against her.

A prerequisite to a suit under Title VII is that the aggrieved party must timely file an EEOC charge.  The statute specifically authorizes a suit "against the respondent named in the charge."  42 U.S.C. §§2000e-5(e) and (f)(1).  The Sixth Circuit has recognized an exception to this requirement if the named and unnamed parties share a "clear identity of interests." Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 899 F.2d 1473, 1480-81 (6th Cir. 1990), quoting Romain v. Kurek, 836 F.2d 241, 245 (6th Cir. 1987).

Romain described two tests by which to determine if a clear identity of interests exists between the named and unnamed parties.  First, the court noted that an identity of interests

may be found if the unnamed party had adequate notice of the EEOC charges and the opportunity to participate in conciliation proceedings. An alternate test, focused on the relationship between the parties, considers four factors:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
>
> (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Romain, 836 F.2d at 246 (citing Glus v. G.C. Murphy Co., 562 F.2d 880 (3rd Cir. 1977).

Plaintiff argues that her failure to identify UC is not fatal to her claim. She argues that her contract identifies UC as the administrator of the residency program, and that UC was therefore the "agent" for University Hospital and the Health Alliance. By naming her employers, she argues she also effectively named their "agent." She claims that the EEOC charge form does not ask for the identification of anyone who serves as the agent of the employer, but only the identification of the "employer." Moreover, due to the realities of the administration

-6-

of the residency program, it would have been almost impossible for the Hospital or the Alliance to investigate and defend her charges without consulting with the UC program managers, and those who actually participated in the events leading to her termination from the program. Plaintiff also argues that there is no prejudice to UC caused by from her failure to identify UC on the EEOC charge, as the parties she did identify have rejected her claims and she assumes UC would have done the same.

Plaintiff does not contest the fact that University Hospital and the Health Alliance are separate, independent entities from UC. Indeed, her complaint alleges that the Hospital and the Alliance are privately owned, while UC is a publicly-funded university. Her assumption that it was unnecessary to name UC because its institutional interests are so similar to those of University Hospital or the Health Alliance is contradicted by these undisputed facts. In several cases, courts have rejected an identity of interest between a parent and subsidiary corporation, despite the reality of their joint economic interests. See, e.g., <u>Knafel v. Pepsi-Cola Bottlers</u>, 899 F.2d at 1481, noting that the identity of interest test "implies that the named and unnamed parties are virtual alter egos."

Nor does she contest the fact that she knew, at the time she filed her EEOC charge, of UC's involvement in the residency program and the decision to terminate her participation. The

Court rejects Plaintiff's assertion that by naming University Hospital and the Health Alliance, she "effectively" named any other entity or individual that may have acted for or on behalf of those entities, as an "agent" or otherwise.  That argument, if accepted, would clearly undermine the statutory requirement that a complainant identify who it was that allegedly engaged in discriminatory acts.  See, for example, Szoke v. UPS of America, 2006 U.S. Dist. LEXIS 69326 (N.D. Ohio, September 26, 2006), dismissing age discrimination claims against the administrators of an employer's ERISA retirement plan because plaintiff failed to name the administrators in the EEOC charge filed against the employer.

    Plaintiff also assumes that UC suffered no prejudice due to her failure to identify UC in the EEOC charge, but she has no facts or persuasive evidence to support that assumption.  Her speculation that UC would reject any efforts at conciliation, and her assumption that UC "must have known" about her charges, are insufficient to defeat Defendant's motion.

    Finally, Plaintiff makes no claim or argument regarding the fourth prong of the test, that anyone at UC told her that UC's relationship with her was to be managed or controlled by either the Health Alliance or through University Hospital.

    In sum, the Court concludes that Plaintiff has not established the "clear identity of interests" that is required to

proceed in this case against UC. The motion to dismiss Plaintiff's claims against UC, as well as the unopposed motion to dismiss Dr. Amy Reed, Dr. Andrew Filak, and Dr. Gregory Rouan (Doc. 11), is therefore granted.

After filing her response to the motion to dismiss, Plaintiff filed a motion to amend or correct her complaint. (Doc. 17) She seeks to add a discrimination claim under Title VI against UC; a claim against the Health Alliance and University Hospital under 42 U.S.C. §1981; and a new claim against the individual Defendants under 42 U.S.C. §1983, alleging that Drs. Reed, Filak, and Rouan acted under color of state law in terminating her from the residency program, thereby violating her right to contract under Section 1981.[1] The Health Alliance and University Hospital have not responded to Plaintiff's motion, but UC and the individual Defendants oppose it, arguing that the proposed amended complaint fails to state a claim for relief, and is therefore futile. (Doc. 19)

UC argues that it cannot be liable under Title VI because it did not sponsor or fund the residency program and did not receive federal funds for that program. (Plaintiff does not dispute that the individual Defendants are not subject to liability under Title VI.) Title VI, 42 U.S.C. §2000d, generally prohibits

---

[1] The proposed amended complaint also restates a Title VII claim against UC. For the same reasons discussed above, the Court finds that this amendment would be futile.

-9-

discrimination in any program or activity receiving federal funds. Section 2000d-4a(2) defines an educational "program or activity" subject to the statute:

> For the purposes of this title, the term 'program or activity' and the term 'program' mean all of the operations of - ...
>
>> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education; ...
>
> any part of which is extended Federal financial assistance.

Plaintiff argues that this broad definition, added by the amendments to Title VI enacted under the Civil Rights Restoration Act of 1987, eliminated the program-specific interpretation of a companion civil rights statute (Title IX) adopted in Grove City College v. Bell, 465 U.S. 555 (1984). A decision from this Court supports Plaintiff's argument. See D.J. Miller & Assocs. v. Ohio Dept. Of Admin. Serv., 115 F.Supp.2d 872 (S.D. Ohio 2000) (Marbley, J.), involving a Title VI claim against an Ohio state agency. The court noted that Section 2000d-4(a)(1) defines a state-sponsored program or activity subject to the statute as "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government ... [or the State or local government] to which the assistance is extended...". Id. at 878. The court found it was not necessary to establish that the specific contract program at issue in that case received federal money, so long as the

agency or the State itself received federal funds.  See also, Lopez v. Webster Cent. Sch. Dist., 682 F.Supp.2d 274, 280 (W.D. N.Y. 2010), holding that it is sufficient to show that the school district receives federal funds, and not just the particular program giving rise to plaintiff's Title VI claim.

However, Plaintiff recognizes that she must meet an additional threshold for a Title VI claim against UC, that the primary objective of federal funding is to provide employment. See, e.g., Stewart v. Simpson Co. Bd. Of Educ., 871 F.2d 1089 (6th Cir. 1989).  UC's proposed sur-reply memorandum notes that Plaintiff has failed to plead this essential fact.  (Doc. 25) Plaintiff alternatively asks for the opportunity to amend her complaint to add these allegations, in the event that the Court finds it necessary to avoid dismissal.  As the Court agrees that this is an essential element of her proposed Title VI claim, Plaintiff should be granted the opportunity to amend in order to clearly articulate a plausible factual basis for this Title VI claim.

The individual Defendants (Drs. Reed, Filak and Rouan) argue that Plaintiff's proposed Section 1983 claim is futile, because Section 1981 does not apply to discrimination based solely on national origin.  Plaintiff's EEOC charge was limited to a claim of national origin discrimination and did not mention race. Plaintiff's original complaint does not mention her race, and

only contains allegations of national origin discrimination. Defendants cite El-Zabet v. Nissan N.A., Inc., 211 Fed. Appx. 460, 462 (6th Cir. 2006)(unpublished), where the Sixth Circuit affirmed dismissal of a Section 1981 claim on similar grounds. Defendants also argue that Plaintiff's proposed Section 1981 claim is not supported by facts suggesting a **plausible** claim of racial discrimination, as required by Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

   Plaintiff's attempts to distinguish El-Zabet are not persuasive.  While that case involved a review of summary judgment under Rule 56, the court's analysis of the Section 1981 claim was based entirely on the allegations of the complaint and the plaintiff's EEOC charge.  The court noted that plaintiff's complaint was not based on race, and was premised upon his national origin.  The only reference to race in the complaint was in what the court described as "an ambiguous statement contained in the section alleging a violation of Title VII...".  El-Zabet, 211 Fed. Appx. at 462.  The same observation applies here. Plaintiff's proposed amended complaint mentions race only in the first paragraph (and there only in conclusory fashion), and in the proposed Section 1981 claim.  Moreover, the Sixth Circuit also relied on the fact that El-Zabet's EEOC charge was limited to national origin discrimination, and did not claim racial discrimination.  The same is true here.

Plaintiff also cites Sisay v. Smith, 310 Fed. Appx. 832, 852 (6th Cir. 2009) to suggest that the Sixth Circuit has adopted a broadened standard to consider national origin discrimination. Plaintiff's discussion of this case is misleading.  That case involved an appeal from a preliminary injunction entered by the district court in a case stemming from actions taken by a local government to limit the number of authorized taxi cabs offering rides from the Cleveland airport.  The case did not involve review of a district court's dismissal of the case, as Plaintiff states.  Moreover, Plaintiff's argument that the Sixth Circuit held in Sisay that plaintiffs "should be afforded latitude in pleading racial discrimination claims under Section 1981" is supported by a quotation from the Sisay dissent.  The majority opinion makes it clear that the plaintiffs did not even appeal the district court's decision that their discrimination claim was not likely to succeed.  The Sisay opinion addresses the potential merits of plaintiffs' due process claim which formed the basis for the district court's preliminary injunction.

This Court finds that Plaintiff's conclusory reference to racial discrimination in paragraph 1 of her proposed amended complaint, added only after Defendants challenged her original complaint, is insufficient to support a plausible claim against the individual Defendants under Section 1981.  The motion to amend is therefore denied with respect to proposed Count Six, the

claim against the individual Defendants.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss (Doc. 13) is granted in its entirety.  Plaintiff's motion for leave to amend/correct her complaint (Doc. 17) is granted in part and denied in part.  The motion is granted to the extent that Plaintiff may file an amended complaint that sets forth facts establishing a plausible Title VI claim against UC.  That amended complaint must be filed no later than September 10, 2010.  The balance of Plaintiff's motion to amend is denied.  Defendants' motion for leave to file a sur-reply (Doc. 25) is granted.

All other claims against UC, and all claims against Defendants Reed, Filak, and Rouan, are dismissed with prejudice.  The claims against University Hospital and the Health Alliance remain pending.

SO ORDERED.

DATED: August 24, 2010    s/Sandra S. Beckwith
                          Sandra S. Beckwith
                          Senior United States District Judge